UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLI FREE I GARNER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-259 |
| | § | |
| KELLY METZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER DISMISSING CERTAIN CLAIMS AND RETAINING CASE

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C.

§ 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321

(1996), any prisoner action brought under federal law must be dismissed if the complaint

is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant immune from such relief.  *See* 42 U.S.C. § 1997e(c); 28

U.S.C. §§ 1915(e)(2), 1915A.   Plaintiff's action is subject to screening regardless

whether he prepays the entire filing fee or proceeds as a pauper.  *Ruiz v. United States,*

160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott,* 156 F.3d 578, 580 (5th

Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999).  Plaintiff's *pro se* complaint

must be read indulgently, *Haines v. Kerner,* 404 U.S. 519, 520 (1972), and his allegations

must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v.*

*Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, plaintiff's excessive force claim against Lieutenant Kelly Metz is retained, and service shall be ordered on this defendant in his individual capacity.  Plaintiff's remaining claims against the remaining defendants are dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.  Upon consent of the plaintiff[1], this case was referred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment.  (D.E. 14).  *See* 28 U.S.C. § 636(c).

## II.     Background facts and plaintiff's allegations.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and he is currently confined at the McConnell Unit in Beeville, Texas.  He filed his original complaint on August 19, 2013, and named the following three individuals as defendants: (1) Lieutenant Kelly Metz (no longer at the McConnell Unit); (2) Major Adam Gonzales (now an assistant warden at the Robertson Unit in Abilene); and (3) Lanelle White-Roell (a licensed vocational nurse who formerly worked at the McConnell Unit infirmary).  (D.E. 1 at 3).  Plaintiff claims that on June 29, 2012, Lieutenant Kelly used excessive force against him, and that Major Gonzales effectively encouraged the unauthorized use of force and/or failed to protect plaintiff, in

---

[1] The plaintiff consented to the undersigned magistrate judge being the presiding judge for all purposes at the *Spears* hearing on November 21, 2013. *See D.E. for 11/21/2013.*

violation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. *Id.* He claims that Nurse White-Roell failed to provide appropriate medical treatment following the use of force, in deliberate indifference to his serious medical needs. *Id.*

On November 21, 2013, a *Spears*[2] hearing was conducted. The following allegations were made in plaintiff's original complaint (D.E. 1), or at the hearing:

Sometime in 1998, plaintiff was involved in an altercation in which he was seriously injured, necessitating *inter alia*, cervical surgery in which certain vertebrae were fused. (D.E. 1, p. 7). He is partially disabled, experiences chronic pain, and is restricted to perform sedentary work only. *Id.* Because of his neck restriction and pain, plaintiff was provided a medical pass allowing him to wear a front-zipper shirt as opposed to the regular pull-over prison shirt. *Id.,* p. 6.

On June 29, 2012, plaintiff went to pick-up his legal mail, passing through several gates and checkpoints, as well as walking past Lieutenant Kelly and Lieutenant Todd who were stationed in front of 3-Building dining facility, without incident. (D.E. 1, p. 4). Once at the mail room, plaintiff began talking to other inmates in line; however, he suddenly noticed Major Gonzales "rush out" of the administrative building and head toward the mail room. *Id.,* p. 7. Major Gonzales angrily approached plaintiff and ordered him to tuck his shirt into his pants, stating that, just because plaintiff had won his

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

quarter-inch beard lawsuit, he was still required to follow all other prison rules.[3]  *Id.*
Plaintiff responded that he was wearing the front-zipper shirt for medical reasons.  *Id.*
Major Gonzales walked away "filled with rage…".  *Id.*

Thereafter, plaintiff observed Major Gonzales talking with Lieutenant Metz and
pointing at plaintiff.   (D.E. 1, p. 7).  Plaintiff gathered his legal mail and began walking
back to his housing area in 7-Building.  *Id.,* p. 8.  As plaintiff entered the Gate 1 area,
Lieutenant Metz ordered plaintiff to tuck in his shirt.  *Id.*  Plaintiff briefly tried to explain
his medical condition and that his neurologist had recommended that the shirt be worn
un-tucked.  *Id.*   Lieutenant Metz looked over at Major Gonzales who was standing
nearby, and then asked plaintiff if he had a medical pass to wear the front-zipper shirt un-
tucked.  *Id.*   Plaintiff explained that, although he had numerous medical passes to
accommodate his disability, including the front-zipper shirt, a cervical collar, and a
double cuff/front hand-cuff  pass, he did not have a specific pass to wear the front-zipper
shirt un-tucked, but that it had never been a problem until today.  *Id.,* pp. 8-9.  Lieutenant
Metz stated that he had spoken to Dr. Whitt and that plaintiff's injuries were a "hoax,"
and he asked plaintiff if he was refusing to obey a direct order to tuck in his shirt.  *Id.,* p.
9.  Plaintiff responded that Lieutenant Metz had a history of "childish anger issues" and
of assaulting inmates, and refused to tuck in his shirt.  *Id.*

Major Gonzales then told Lieutenant Metz to write plaintiff a disciplinary case for
refusing to follow an order and to escort him to pre-hearing detention ("PHD").  (D.E. 1,

---

[3] *See Garner v. Morales*, Case No. 2:06-cv-218 (in which plaintiff successfully challenged the TDCJ's no-beard
grooming policy under RLUIPA and was given permission to wear a quarter-inch beard.

p. 10).  Initially, Lieutenant Metz began to handcuff plaintiff with one set of handcuffs, but Lieutenant Todd intervened and added his handcuffs to make double-cuffs in compliance with plaintiff's medical restrictions.  *Id.*  However, as Lieutenant Metz was placing the double-cuffs on plaintiff, he used his body weight to "slam plaintiff into the steel fence pole,"  and he twice quickly banged plaintiff's forehead against the pole while telling plaintiff not to resist.  *Id.,* p. 10-11.    Thereafter, Lieutenant Metz ordered Lieutenant Todd to escort plaintiff to medical.  *Id.*, p. 11.

At the infirmary, plaintiff complained of a knot on his head and a throbbing headache.  (D.E. 11).  Plaintiff was examined by Nurse White-Roell who took his blood pressure and temperature.  *Id.*  Nurse White-Roell examined the knot on plaintiff's head but sarcastically told him that it was only a small bump and would not kill him, and she cleared him for release to pre-hearing detention.  *Id.*

Lieutenant Todd escorted plaintiff to 11-Building for pre-hearing detention.  (D.E. 1, p. 12).  Plaintiff told Lieutenant Todd that he was feeling nauseated and light headed, and Lieutenant Todd assisted him to the holding cage where he could sit down.  *Id.*  After about twenty minutes in the holding cage, Sergeant Morales arrived and stated that Major Castro wanted to know why plaintiff was in lock-up.  *Id.*  Plaintiff related that he believed Major Gonzales was angry about plaintiff's on-going litigation, and that the disciplinary case had been fabricated around plaintiff's un-tucked shirt.  *Id.*  Sergeant Morales left to report to Major Castro, and when she returned, she ordered Officer Garza to release plaintiff from 11-Building and to vacate the disciplinary case.  *Id.* at 13.

Plaintiff left 11-Building and went to the infirmary where he told Nurse White-Roell that that he was seeing spots and had a headache, and he requested Tylenol. (D.E. 1, p. 13). Nurse White-Roell told plaintiff to submit a sick call request ("SCR"), noting that he had received a use of force examination earlier and that he did not require medication. *Id.* Plaintiff left the infirmary with a headache and feeling dizzy, which continued throughout the weekend. *Id.* at 14.

On June 29, 2012, plaintiff filed a Step 1 grievance, Grievance No. 2012189772, concerning the June 29, 2012 use of force ("UOF"), and it was denied on August 7, 2012. (D.E. 1, p. 14). Plaintiff filed a Step 2 appeal, and it was denied also. *Id.*

On July 3, 2012, plaintiff received a notice of a minor disciplinary case, Case No. 20120298255, in which he was charged with refusing to obey an order and creating a disturbance. (D.E. 1, p. 14). On July 6, 2012, plaintiff spoke to Major Castro who confirmed his understanding that he was not to receive a disciplinary case regarding the June 29, 2012 incident, and she indicated that she would have the case terminated prior to a disciplinary hearing. *Id.* To date, no disciplinary hearing has been conducted on the minor disciplinary case.

Plaintiff is seeking compensatory and punitive damages.[4]

---

[4] Plaintiff also claims to be seeking a preliminary and permanent injunction "ordering prison officials to cease their physical violence and retaliation toward plaintiff…". (D.E. 1, p. 18). However, injunctive relief cannot be imposed against persons or entities not a party to this lawsuit. *See F.D.I.C. v. Faulkner*, 991 F.2d 262, 267 and n. 7 (5th Cir. 1993) (an injunction is binding only upon the parties to the action and the persons acting in privity with them).

III.    **DISCUSSION**.

A.      **Legal standard.**

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.   42 U.S.C. § 1997e(c)(2).   "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."   *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).   An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.   *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).   The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.   *Id.*

B.      **Official capacity claims.**

Plaintiff does not state whether he is suing defendants in their official or individual capacities, and therefore, it is assumed that he is suing them in both.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).   The Eleventh Amendment, however, bars claims for money damages against a state or state agency.   *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).   As

such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent plaintiff is suing any defendant in his or her official capacity for money damages, those claims are barred by the Eleventh Amendment. Accordingly, plaintiff's claims for money damages against all defendants in their official capacities are dismissed with prejudice as barred by the Eleventh Amendment.

### C.    Excessive force.

Plaintiff claims that Lieutenant Metz used excessive force against him when he applied the handcuffs because he purposely pushed plaintiff into a metal pole and twice struck plaintiff's head against the pole. Plaintiff claims that he was dizzy, nauseated and had a headache after the use of force, that the headache lasted the entire weekend, and that he is now more prone to headaches. Plaintiff contends that Major Gonzales effectively participated in the use of force by "encouraging" Lieutenant Metz.

Inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez,* 185 Fed. Appx. 360, 363 (5th Cir. 2006). To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to

maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10, (1992).   Thus, a prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury."   *Id.* at 4; *see also Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) (reversing district court's dismissal of prisoner's excessive force claim based entirely on its determination that his injuries were "*de minimis*," reasoning that it was "at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury.").   Additional relevant objective factors in the inquiry of the application of excessive force include (1) the extent of the injury suffered; (2)  the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5)  any effort made to temper the severity of a forceful response.   *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999).

Although a *de minimis* injury is not cognizable, the extent of the injury necessary to satisfy the injury requirement "is directly related to the amount of force that is constitutionally permissible under the circumstances."   *Ikerd v. Blair*, 1010 F.3d 430, 434-35 (5th Cir. 1996) (citations omitted); *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (noting that the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer,* 180 F.3d 699,  704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is ... subjective -- it is defined entirely by the context in which the injury arises.").

Here, plaintiff claims that Lieutenant Metz slammed him against a pole and twice struck his forehead upon the pole while placing him in restraints, despite the fact that plaintiff offered no attempt to resist the application of handcuffs.  Plaintiff's testimony also suggests that Lieutenant Metz was agitated and acting out of anger.  Taking plaintiff's allegations as true, plaintiff has stated a claim of excessive force against Lieutenant Metz as there is no evidence that any force was necessary to escort plaintiff to pre-hearing detention based on the charge of refusing to tuck in his shirt.  Therefore, plaintiff's excessive force claim against Lieutenant Metz is retained, and service shall be ordered on Lieutenant Metz in his individual capacity.

Plaintiff claims that Major Gonzales participated in the excessive force because he witnessed Lieutenant Metz's conduct and did not correct it, thereby encouraging it. However, to state a cognizable constitutional violation, a plaintiff must allege facts that demonstrate the official was personally involved in the constitutional deprivation. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).  Plaintiff does not suggest that Major Gonzales participated in the use of force, but offers only his conclusory opinion that he "encouraged" the force by not stopping it.   The fact that Major Gonzales was a bystander does not equate with personal involvement.

Moreover, to the extent plaintiff is attempting to allege that Major Gonzales failed to protect him from Lieutenant Metz's use of force, he fails to state a constitutional violation.  A prison official is deliberately indifferent to an inmate's safety only if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825,

832 (1994).  Plaintiff does not allege any facts to suggest that Major Gonzales knew, or should have known, that Lieutenant Metz would use excessive force when placing plaintiff in restraints.  Plaintiff fails to state an Eighth Amendment claim against Major Gonzales.

### D.    Retaliation.

Plaintiff claims that Lieutenant Metz and Major Gonzales harassed him about his un-tucked shirt and fabricated the disciplinary case against him in retaliation for his filing lawsuits.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).  It is well-settled that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, the Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 Fed. Appx. 386, *1 (5th Cir. Jul. 12, 2010) (unpublished), citing *Wood*, 60 F.3d at 1166.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger,* 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. *Woods*, 60 F.3d at 1166.

Plaintiff suggests that Major Gonzales was angry about plaintiff's pending and previous lawsuits and specifically referenced plaintiff's success in an earlier action challenging the TDCJ grooming policy. However, the fact that Major Gonzales referenced plaintiff's successful lawsuit or that he was aware of plaintiff's litigation activity does not establish that Major Gonzales was motivated by retaliation when he confronted plaintiff about his shirt being un-tucked. Indeed, plaintiff admits that his front-zipper shirt was not tucked in, and he also admits that his medical pass did not excuse him from the TDCJ requirement that prisoners wear their shirts tucked into their pants. Thus, plaintiff cannot establish that, but for a retaliatory motive, Major Gonzales would not have confronted him about the shirt.

Similarly, plaintiff related that Lieutenant Metz effectively ignored him when he first passed by to get his mail, and it was only after the encounter with Major Gonzales that Lieutenant Metz became involved and, upon Major Gonzales' order, placed plaintiff in restraints to be taken to pre-hearing detention. There is no evidence to suggest that

Lieutenant Metz' actions were motivated by retaliation, but to the contrary, that he was simply following the instructions of Major Gonzales. Indeed, there is no chronology of events from which retaliation can be inferred. Thus, plaintiff's retaliation claims against Major Gonzales and Lieutenant Metz are dismissed with prejudice for failure to state a claim.

### E.    Denial of medical treatment.

Plaintiff claims that Nurse White-Roell was deliberately indifferent to his serious medical needs following the use of force, alleging that she performed only a cursory examination and refused to give him pain medication.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the defendant acted with deliberate indifference to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). To act with deliberate indifference, a defendant must be aware of the plaintiff's serious medical need or aware of specific facts from which an inference could be drawn that a serious medical need exists, and perceiving the risk, must deliberately fail to act. *Farmer*, 511 U.S. at 837. Negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). *See also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim"). If a prison medical employee exercises professional medical judgment, his behavior will not violate a prisoner's

constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza*, 989 F.2d at 195; *Varnado*, 920 F.2d at 321. "Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Taking plaintiff's allegations as true, his claims are no more than a mere disagreement with the medical treatment provided by Nurse White-Roell. Plaintiff does not claim that she refused to treat him, and indeed, he admits that she conducted an examination that included taking his blood pressure and temperature. Nurse White-Roell examined plaintiff's head and characterized his injury as a "small bump." She did not provide him with pain medication, and found him stable enough to be released to pre-hearing detention.

Plaintiff does not claim that he was bleeding or could not ambulate. He was able to walk on his own to pre-hearing detention, and walk back to the infirmary after his release. Nurse White-Roell instructed him to file a sick call request for further treatment, and plaintiff understood this instruction. Thus, Nurse White-Roell assessed plaintiff's medical condition and found no serious medical need, and there is no evidence that she denied plaintiff appropriate treatment or ignored a serious medical need. Thus, plaintiff's claim of deliberate indifference against this defendant is dismissed with prejudice for failure to state a claim.

IV.     **Conclusion.**

For the reasons stated above, plaintiff's excessive force claim against Lieutenant Metz is retained and service shall be ordered on this defendant in his individual capacity. Plaintiff's remaining claims are dismissed with prejudice for failure to state a claim upon which relief can be granted and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

ORDERED this 17th day of December, 2013.

Jason B. Libby
United States Magistrate Judge